*SPENCER'S HEIRS* vs. *GRIMBALL.*

WesternDis.
October,1827

**APPEAL** from the court of the sixth district.

**PORTER, J.** delivered the opinion of the court. This case, with several others, growing out of the same subject matter, and involving the same questions of law, have stood for several years on the docket, owing to one of the judges of this court having an interest in them, and another, while at the bar, been employed as counsel for the plaintiffs. A late act of the general assembly, has removed the objection which existed to the latter, and after a full discussion they are now presented for decision. The member of the court who is on this occasion, the organ of its opinion, would have gladly declined taking any part in these causes; but the legislature having declared that being once the advocate of a suitor in our courts, is not a disqualification from becoming his judge, he is no longer permitted to consult his own feelings. He has however, endeavoured, and he hopes he has succeeded, to discard all former impressions, and abandon any previous opinions which grew out of the different relation in which he once stood to the parties. In the accomplishment of this desire he has been aided by the

Under the former government of Louisiana, a sale by Indians, of land assigned to them, did not incapacitate them from acquiring a right to soil in land to which they removed. If a sale by the Indians was followed by payment of the price, and delivery of the property, no person can take advantage of an informality in the mode of making it, but the Indians. The nullity is relative. The provision so in the act of congress, that under no one claim shall any person be entitled to more than a league square, applies to the caims under the Spanish government, not to *the claims* made before the board of commissioners.

Wester Dis.
October,1827.

SPENCER'S
HEIRS
vs.
GRIMBALL. great length of time which has elapsed since his mind was at all turned to the subject; and by the able argument at the bar, which has placed the principal questions of the case, in every light of which it is believed they are susceptible.

The suit is one for land. The title of the plaintiffs is derived from certain persons called Millar and Fulton, who, previous to the change of government, bought from the Chocto, Pascagoula, and Belloxi tribes of Indians, all the land owned by them on the Bayou Bœuf. The defendant claims the premises in virtue of a purchase from the United States. As he is in possession, he has availed himself of the legal right of persons so situated, which enables them to force their adversaries to recover on the strength of *their* title; and he has made various objections to that of the plaintiffs.

These objections may be reduced under the three following heads:—

*First*—That the Indians had no title in the land to sell.

*Second*—That they did not sell.

And *third*, and lastly, that if they did, the property which they could legally dispose of, did not embrace the *locus in quo.*

The first of these questions can scarcely be

Western Dis.
Oct 1827.

SPENCER'S
HEIRS
vs.
GRIMBALL

considered an open one in this court. It has already been decided in the cases of *Reboul* vs. *Nero*, and *Martin* vs. *Johnston*, that tribes of Indians, to whom lands were allotted by the Spanish officers of Louisiana, in pursuance of the laws of the Indies, acquired a legal title to the soil. That they were in every respect as completely owners of it, as those who held under a complete grant, although being considered in a state of pupillage, the authority of the public officers, who were constituted their guardians, was necessary to a valid alienation of their property. Of the correctness of these decisions, we have no doubt, and we deem it sufficient to refer to those laws of the Indies on which they were professedly based. 5 *Martin*, 655. *Ibid.* 490. *Recop. de las Indias, lib.* 4, *tit.* 12, *l.* 13, 8.

But it is contended that no right was shown in the Indians to settle in one part of the country, and after settling there, to move off and place themselves on other portions of the domain, and dispose of that too, as soon as a real or fancied necessity, or caprice, might urge them to such a measure. That the Spanish laws did not confer on them any such privilege, and that the exercise of it would have been incom-

Wesjern Dis. patible with complete sovereignty over the soil,
October,1827.
‿‿‿ ‿‿‿ because in this way the whole right of the na-
SPENCER'S
HEIRS     tion in it might be lost. This objection appears
vs.
GRIMBALL. to us of little weight when considered in rela-
tion to the laws and the policy of the country
by which its validity must be tested. Spain ap-
pears to have felt earlier than any other Euro-
pean nation, the wrongs inflicted on the origi-
nal inhabitants of this continent, and her legis-
lation bears repeated and anxious marks of
her desire to repair the injuries her ambition
and cupidity had occasioned. Whether she
was defeated or not in this laudable purpose by
the neglect of her subordinate agents, cannot
affect the argument in a court of justice. Her
indulgence to those tribes of Indians who sur-
vived the conquest; her liberality, or rather jus-
tice in allotting to them particular portions of
the soil she had wrested from them, and her
care to make these acquisitions of value, by
preventing the intrusion of white settlers, are
proved by various laws, passed at different
times, for the government of her colonies in
America. One of these laws meets the very
objection taken in this case, and directs, that
when the Indians give up their lands to the
whites, others shall be assigned to them    Y

*porque a los Indios se habian de senalar y* <span>Western Dis.<br>*October,* 1827</span>
*dar tierras, y aguas, y montes, si se quitaren*
*a Espanoles, se las dan justa recompensa en* <span>SPENCER'S<br>HEIRS<br>*vs.*<br>GRIMBALL.</span>
*otra parte.   Recop. de las Ind. liv.* 6, *tit.* 3,
*leg.* 14.    It is true this law does not specify in
what mode the Indians must abandon, to enable
them to enjoy this advantage; it cannot how-
ever be presumed it was in the contemplation
of the government to permit them to make do-
nations of their lands to the Spanish settlers.
But, be that as it may, the expressions used, do
by no means authorise this court to say, that the
act of the Spanish governor assigning the lands
now in dispute was null and void, because
they had already sold a place previously given
to them.  And at all events, this was a question
between them or their assignees; and the general
government of the United States have waived
the objection by confirming (as it will hereaf-
ter be shown they have done) the alienation
made by the Indians.

II.  Considering, therefore, that it is perfectly
clear, a title to the soil was vested in the ven-
dors of the plaintiffs, which they might sell;
whether they have sold or not is the second ques-
tion in the order in which we have stated the ob-
jections made to the plaintiff's right of recovery.

Western Dis.
October, 1827

SPENCER'S
HEIRS
vs.
GRIMBALL.

The objections taken on this branch of the subject by the defendant, went both to the sale made by the Chocto tribe of Indians, and that jointly executed by the Pascagoulas, and Beloxi. But a slight attention to the relative situation of the different tribes on the bayou, will shew that the validity of the sale of the former cannot be called in question between these parties in this suit. According to the evidence, the Choctos were placed highest up on the stream; the Pascagoulas next below, and the Beloxis below them. Millar and Fulton bought by two distinct instruments of writing, the right and title of the three nations. The land claimed by the plaintiffs is embraced within the lowest part of this purchase, hence, if they have any right, it must be under the Beloxi tribe; consequently, whether the Choctos have regularly sold or not, may be dismissed from our consideration, as totally unconnected with the case before us.

The Pascagoulas and Beloxis sold by one public act. It was passed before the Commandant of Rapides, and afterwards approved by the Governor of Louisiana. The price agreed on appears to have been paid, and possession was delivered. The defendant con-

tends the plaintiffs have no right to recover from him, even admitting the Indians could, because, by the laws of Spain, their lands must be sold at auction. The plaintiffs reply that this informality, if it be such, is one of which the defendant has no right to avail himself. That the Indians can alone claim the benefit of it.

Western Dis.
October, 1827

SPENCER'S
HEIRS
vs.
GRIMBALE.

This question was discussed and decided in the case of *Martin* vs. *Johnston*, and the defendant is wholly in error in supposing that because there, the Indian title was presented by a defendant in possession, and here by a plaintiff seeking to obtain it, that the authority of that decision has no application to this case. The plaintiff there shewed a legal title to the premises, which compelled the defendant to establish one in himself; in doing so he was *actor* and every objection was open to his adversary, that would have been if Martin had been in possession, and Johnston plaintiff. But, as the correctness of the decision to this extent has been strongly impugned, it may be as well to look at the subject a little more closely. It involves, in its examination, the doctrine of what is called in our jurisprudence, *absolute* and *relative* nullities; one which though clear enough

Western Dis.
October,1827.

SPENCER'S
HEIRS
vs.
GRIMBALL.
in relation to those extreme cases, which sug-
gested the distinction just stated, frequently oc-
casions great embarrassment in its application,
from the difficulty of distinguishing satisfacto-
rily, under which head of nullity the objection
falls. It is believed, however, that little can
exist in relation to the case before us. Some
of the writers on our law of the very highest au-
thority, are of opinion, that it is only such nul-
lities as grow out of prohibitions, having for
their *first and principal object*, reasons of pub-
lic utility, that strangers can set up in their de-
fence; and that whenever the nullity is pro-
nounced by the law more in relation to the in-
dividual, than the public, the party intended
to be protected can alone claim the benefit of
it. Others of equal celebrity reject the distinc-
tion, and think, that whenever the contract
claimed under, is *declared* null for want of cer-
tain formalities, that no person can claim title
under it. Which of these doctrines we should
incline to adopt, this case does not require us
to say, nor have we any opinion formed on the
matter. Taking the principles contended for
by those who have pushed the doctrine the far-
thest, in support of the pretension set up by the
defendant, the defence cannot avail him. In

argument, his counsel correctly assimilated the Western Dis.
Oct. 1827. incapacity under which the Indians were plac- SPENCER'S
HEIRS
vs.
GRIMBALL. ed, to that to which minors are subject, and it -was urged that a sale of the property of the lat- ter was null and void, if not made with the formalities prescribed by law. *Toullier*, among others, puts the very case of a minor selling informally, as a voidable, not a void contract, of which the nullity is only relative; though he states, it would be different, if a forced sale, or one made by his tutor, did not pursue the forms prescribed by law. A moment's consideration as to the consequences that follow a contract with a minor, will show how sound this doctrine is. In the first place, the party contracting is bound to the same extent as if he had bargained with a person of full age. The minor, himself, too is bound, if, after arriving at the age of majority, he expressly, or impliedly approves of the alienation, or suffers the time within which he may rescind it, to elapse without bringing an action to set it aside. An agreement which may produce such effects, cannot be considered *null;* it is only *voidable,* and no one can *avoid* it, but him whom the law intended to protect. The consequences of a contrary rule would be, that a third party, by getting

Western Dis.
October,1827.

SPENCER'S
HEIRS
vs.
GRIMBALL.

possession of property to which he had no right, might have a contract declared null, which the minor, for whose benefit the protection was given, would affirm when he came of age. Into such an absurdity, this court cannot permit itself to be led. *Invito beneficium non datur* is as well the maxim of law, as it is of common sense, and if the party who is empowered to set aside a contract, does not choose to do it, no other can. This case shows most strikingly, we think, the justness and propriety of the rule we have been endeavouring to explain. —The contract was complete—there was thing—consent—price paid—and possessson delivered. Whether the tribe of Indians who sold, have been swept away and extinguished by the advancing tide of civilization, or whether some remnants of them do not still exist, the record does not inform us. But in either hypothesis, the consequence is the same, or nearly so. In the first, they have left no representatives, and the recision of the contract never can be demanded. In the last, a quarter of a century has now elapsed, without any attempt on their part to annul the sale. With what propriety, then, can a third party seek to have it avoided? and how can he be permitted

Western Dis.
October, 1827

SPENCER'S
HEIRS
vs.
GRIMBALL,

to avail himself of such privilege, when every presumption arising out of the facts of the case, compels the belief, that the parties whose right he wishes to enforce, either never can, or never will, enforce it themselves? *Toullier, Droit Civil Francais, vol. 7, no. 553, art. 561 and 564. Dunod, traite des Pres. par. 1, cap. 8, 47. Nouveau Repertoire de jur is Verbo Nullite, sec. 2 & 3.*

III. The last and the most difficult question in the case, is that which relates to the location of the titles under which the plaintiffs claim. It has been already stated that they derive their right from Millar and Fulton, who purchased from three tribes of Indians. The Choctos were first placed on the bayou Beuf; the Pascagoulas and Biloxis, last. The upper boundary assigned to the Choctos was the bayou Robert; the lower does not appear to have been positively fixed. When the Spanish officer located the Biloxis and Pascagoulas, altho' they were distinct and separate communities, he gave them a joint possession, and assigned them land from the lower boundary of the Choctos, down to the mouth of the bayou Crocodile. The whole of these proceedings exhibit a great deal of that looseness and irregularity which

Western Dis.
October. 1827.

SPENCER'S
HEIRS
*vs.*
GRIMBALL.

characterize the acts of the Spanish officers in Louisiana. Both the commandant and the Governor seem to have been ignorant, or if not ignorant of, to have entirely disregarded the laws of the Indies, which limit the quantity of land each tribe was entitled to: for the space assigned to the Pascagoulas and Biloxis, far exceeds that which under the most liberal construction of those laws they should have received. But the irregularity which arose from the acts of the officers of the government, is not the only difficulty the case presents. The Indians settled so near each other that there is not a league from each village. Under these circumstances, the argument of the case exhibited a great diversity of opinion as to the true location. The counsel for the plaintiffs have not been able to agree themselves on the proper one. The defendant contends for boundaries which would place him far out of the limits of the Indian title.

Before examining the grounds assumed by the defendant on this point, it becomes necessary to notice and dispose of these taken by the plaintiffs. Their first proposistion appears to us quite untenable. They have contended that by the local usages existing in Louisiana, the

Indians were entitled to more than a league; Western Dis:
Oct. 1827.

SPENCER'S
HEIRS
vs.
GRIMBALL. and the evidence they offer of these usages, is the assent of the Governor to a sale, by which much more was sold by one tribe. Respect is certainly due to the official acts of the officers of the former government, and in the absence of proof to the contrary, we should be inclined to consider them *prima facie* correct. But in relation to the subject matter before us, we have the law itself, which clearly limits the quantity to which Indians were entitled. Now for us to say, that a violation of that law was an evidence of an usage which controuled it, would place all laws at the mercy of those who owed them obedience.

Some of the counsel who have advocated the rights of the plaintiffs in the several causes now before us, which have grown out of the purchase from the Indians, have urged that the law only gave the superficies embraced within a square league to each tribe. Others have contended that they were entitled to a league in every direction round their village. It is unnecessary for us to decide this point, for according to the evidence, a league from the lowest village on the bayou, which was that of the Biloxis, would not reach the land claimed by the defendant.

Western Dis.
Oct. 1827.

SPENCER'S
HEIRS
vs.
GRIMBALL.

The Chocto Indians who were first placed on the bayou Bœuf, had laws assigned them from the place where the bayou Robert enters into it, down to the spot occupied by them as a village. This space was about one league. Previous to their sale to Millar and Fulton, they had sold to other persons portions of this soil, and their upper limit at the time the former purchased, was near the confluence of the bayou Clair and bayou Bœuf, at a place represented on the plat of survey by the letters C. B. In their act of sale to Millar and Fulton, they state, that they sell the villages and fields granted them by the Baron de Carondolet, and that they do this in the presence of the Biloxi and Pascagoula Indians, who give them a sufficient portion of *their* land *to make up* the village and fields. The boundaries given in this sale are a sycamore tree above, and two sweet gums below, adjoining the lands of the Pascagoulas. In the sale from the Biloxis and Pascagoulas, it is declared that they sell from the Chocto village above, down to a limit on the bayou, which will embrace all the lands granted to them. On these facts the defendant contends that the Choctos having sold nearly all the soil belonging to them, previous to the ali-

enation to Millar and Fulton, and no evidence WesternDis. *October*,1827 being given of a new assignment to them of any land below, that their *lower limit* must be the SPENCER'S HEIRS *vs.* GRIMBALL. village.    That this conclusion is strengthened by the Pascagoulas and Beloxis calling to bound the land sold by them on that village.    And that in all events, all who claim under Millar and Fulton cannot contest this argument, because they acknowledged, in accepting a sale from the Choctos with that boundary, that their title did not extend any further down the bayou; and afterwards purchased from the other tribes; and in the deed of conveyance, admitted that the lands acquired from the Pascagoulas and Beloxis, joined upon that village above.

We trust, that this is not a weak summary of an argument which was strongly pressed on our attention on the hearing; if correct, the two leagues which the Pascagoulas and Beloxi tribes could legally dispose of, would not come near to the *locus in quo.*    But whether the position assumed would be tenable or not, if the plaintiffs relied solely on the title from the Indians, we need not inquire.    The question assumes a very different aspect, when they present themselves under the confirmation of the United States.

Western Dist
October,1827.

SPENCER'S
HEIRS
vs.
GRIMBALL.

In the notice filed with the commissioners appointed by the general government to pass on the validity of land titles in Louisiana, the persons under whom the plaintiffs claim, de-manded a confirmation of their title to 46,800 arpents of land on both sides of bayou Bœuf, in virtue of purchases made from the Chocto, Pascagoula and Beloxi tribes of Indians. These commissioners after hearing evidence in support of the demand thus made, recommended a confirmation of it to the extent of 23,400 arpents. In their report, they divided the different claims on which they had passed into distinct classes, according to their dignity, designating them by different letters of the alphabet: that in rélation to the Indian title was marked B. The act of Congress confirming the report, is in the following words, "the claims marked B, and described in the several classes in the reports of the commissioners for the western district of the state of Louisiana, formerly territory of Orleans, and recommended by them for confirmation, are hereby confirmed. *Provided nevertheless*, that under *no one claim* shall any person or persons be entitled under this act, to more than the quantity contained in a league square." *Ing. Dig.* **537.**

It becomes necessary to enquire what was meant by the legislature in using the term *one claim*:—to ascertain whether the limitation was affixed to the claim set up before the commissioners, or to the claim under the Spanish government, in virtue of which the demand had been made. It cannot be doubted we think but the latter was intended, and that this results as well from the phraseology used, as from the reason of the thing. If the intention of Congress had been, that no person should obtain more than a league square of land, no matter how many original titles emanating from the Spanish government he had acquired by purchase or otherwise, the language proper to express that idea would have been resorted to, and the act would have declared that *no claimant* should have more than one league. Instead of that the expressions are, that under *no one claim* shall any person or persons be entitled to more than the quantity contained in a league square. If under *more* than one claim, the consequence therefore, not necessarily, but strongly is, that they may have more.

Again, by the terms *under one claim*, is clearly meant the title from the former government *under* which the demand for confirma-

Western Dis.
*October*, 1827

SPENCER'S
HEIRS
*vs.*
GRIMBALL.

Western Dis.
October,1827.

SPENCER'S
HEIRS
*vs.*
GRIMBALL.

tion was made. To apply it to the claim put in before the commissioners, would be admitting, that Congress intended to grant lands in consequence of the claim made to them, instead of the claim or titles which existed for them under the former government.

The language is so clear, that there is scarcely a necessity for resorting to the other rules which aid courts of justice in the interpretation of statutes. But if we recurred to one of them, the construction we have given would be greatly strengthened. It is well known that no inconsiderable part of the soil of Louisiana is covered by large grants, in regard to which the government of the United States has hitherto exhibited great jealousy. If the word *claim* in the act of Congress should be held *to* apply to the derivative title, instead of the original grants, *they* would have been confirmed by this law, for all portions of them which the grantee might have sold to an extent not exceeding one square league. That such was not the intention of Congress, we believe cannot be questioned. And these observations suggest the idea, that it was still less their intention to limit the rights of purchasers who held under titles that were good by the laws of

Western Dis.
October,1827.

SPENCER'S
HEIRS
vs.
GRIMBALL.

Spain. The instances were numerous at the change of government, of land originally granted out in quantities less than a league square to different individuals having centred in one person who had legally acquired them through purchase, exchange, or the other modes by which property is transferred. If these titles were all good, and proper objects of confirmation, had they remained in the hands of the grantees, no possible reason can be given why they should not be good to those who held under them. And to say, that because the latter inserted all these demands in one notice, or one claim, before the commissioners, they could only have one league, while the persons under whom they claimed would have obtained a confirmation to the whole extent of their titles, would be supposing Congress to have objections to the claimant instead of the title. Nay, it would involve a greater absurdity. For admitting the claimant to have acquired six square leagues, under so many different titles, if he had filed separate claims for each, the limitation in the act would have given him the whole quantity: but if he had embraced them all in *one claim* before the commissioners, he would only have had a league square.

Western Dis.
Oct. 1827.

SPENCER'S
HEIRS
vs.
GRIMBALL.

If the foregoing observations be correct, Millar and Fulton's title was confirmed to the extent of three leagues, for they claimed under three distinct titles, existing under the Spanish government: namely, one in favour of the Chocto, another in favor of the Pascagoula, and the third in favor of the Beloxi tribe of Indians.

In the preceding opinion, we have dwelt more at length on several parts of the case than their difficulty or importance rendered necessary. But situated as the court is in the decision of this cause, we were unwilling to assume any thing, or state any conclusion, without stating at the same time the reasoning by which we arrived at it, and the premises on which that reasoning was founded.

It now only remains for us to ascertain how far the defendant interferes with the rights of the plaintiffs under the confirmation of three square leagues. The surveyor swears, that three leagues from the sycamore tree (which was the upper boundary given by the Choctos in the sale to Millar & Fulton) will not enter into the improvement of the defendant by one arpent. But he adds, this measurement was made without regard to the superficial contents of the survey, which, if observed, would give the

lines a greater length, and consequently ex-
tend the line further into the claim of the de-
fendant. According to the notes which accom-
panys the plot of survey returned into court, a
line designated thereon by the letters **R F T S**
is stated to include the quantity of three leagues
between it and the sycamore stump, if the land
s surveyed so as to give 40 arpents on each side
of the bayou. This mode of laying off the land
is agreeable to the constant usage under the
French and Spanish governments, and to the
report of the commissioners, who confirmed
the claim to the extent of forty arpents on each
side. The limitation in the act of congress is
to quantity, and leaves the manner of location
indicated in the report, untouched.

The line already referred to, embraces a part
of the land claimed by the defendant, and to
the extent of that interference, the plaintiff must
recover; but we cannot give a final judgment,
for the evidence does not inform us of the ex-
tent of that interference. The district court
decreed that the plaintiffs should recover all the
land which might be included within certain
lines, while the judgment, to be susceptible of
execution, ought to have ascertained the exact
quantity within those lines, otherwise, a new

Western Dis.
*October*,1827.

SPENCER'S
HEIRS
*vs.*
GRIMBALL.

suit might arise from alleged errors in the sheriff carrying the decree into effect.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided, and reversed; that the case be remanded for a new trial, and that the appellee pay the costs of this appeal.

*Scott & others* for the plaintiffs, *Wilson* for the defendant.